IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, )
                                          )
               v.                         )        Criminal No. 19-139
                                          )
                                          )
JAMES G. ALLEN, JR.,                      )
                                          )
               Defendant.                 )

**<u>SENTENCING MEMORANDUM ON BEHALF OF
JAMES G. ALLEN, JR.</u>**

AND NOW comes Defendant, James G. Allen, Jr., (hereinafter referred to as Dr. Allen), by and through his attorney, R. Anthony DeLuca, Esquire, and respectfully submits the within Memorandum:

**<u>OPENING</u>**

To some, the allure of Greek Sirens is just as powerful today as it was in ancient mythological times. Their enchanting music and melodic voices enticed sailors to sail ahead, oblivious to the deadly outcroppings and shipwreck onto the rocky coast. In our current instant-gratification, digital-informational age, individuals, who should and have known better, expose themselves to Siren-enticing and self-confirming viewpoints, that upon more sober reflection, they never would have explored. Although the above is an imperfect

analogy, Dr. Allen's steadfast acceptance of the idea that the federal government could not, at least with his unconventional reasoning, tax his earnings, as advocated in Peter Hendrickson's book "Cracking the Code", reminds one of a sailor intentionally steering his ship towards the beguiling Sirens' call and to his ultimate doom. Regarding Dr. Allen's "unconventional reasoning", his sister Nancy Lorenz writes in her character letter that Dr. Allen possesses a "proven ability to critically think outside the box". (Exhibit A) While Dr. Steven Chernus in his character letter states, Dr. Allen "is inclined to express his views with zeal; I have never known him to act out of dishonorable or venal motives." (Defendant's Exhibit A)

However, this is not mythology and Mr. Hendrickson is not a Greek Siren, therefore the defendant, Dr. James G. Allen, Jr., stands before this Honorable Court to be sentenced for his instant conduct, which he readily admits was wrong.

Dr. Allen understands there exists a thin line between presenting an explanation for one's conduct and offering an excuse for one's behavior. He recognizes the employment of an "excuse" should be limited to guilt-determining forums whereby the accused avers his conduct/behavior should be forgiven due to circumstances

beyond his control. Just as a sailor steers his ship into oblivion because of the irresistible Sirens' call.

Dr. Allen posits that an "explanation" on the other hand is an admission of guilt with an averment as to the motivation that prompted the conduct or behavior. Like a sailor refusing to place the sound-blocking wax into his ears, his motivation being that he believes he could resist the Sirens' call and steer the ship into safe waters.

Although knowing motive is not an element of the instant offense, Dr. Allen avers that one's motivation can and should be considered by a sentencing court in determining the nature and circumstance of the offense and the defendant's history and character. See *United States v. Tomko, 562 F.3d 558, 563 (3d Cir. 2009)* (government posited greed rather than community service and philanthropy defined Tomko's character in arguing against a downward variance sentence); See also *United States v. Haines, 2013 U.S. Dist. LEXIS 189439. (E.D. Pa. Nov. 14, 2013)* ("Haines' motivation . . . is certainly less offensive than the greed typically motivating defendants convicted of fraud, and we find this is an important circumstance of the offense that could warrant a variance.") See also *United States v. Connors, 2007 U.S. Dist. LEXIS 74904, 2007 WL 2955612, at *3 (E.D. Pa. Oct. 9, 2007)* (the lack of personal profit and the Defendant's motivation was found to be relevant

to the nature and circumstances of the offense conduct and could be considered in granting a downward variance.) The following narrative is intended to provide context, motive, and an explanation for Dr. Allen's conduct and is not meant in any way to justify or excuse his behavior.

Dr. Allen was born on February 6, 1966 to James Granger Allen, Sr. and Elizabeth Allen (nee Johnson). Mr. Allen, Sr.'s employment as a mortgage loan officer and Dr. Allen's personal experience as a real estate loan officer and broker plays an integral role in why Dr. Allen currently stands before this Honorable Court.

Upon being apprised of an Internal Revenue Service criminal investigation in the Spring of 2018, Dr. Allen staunchly believed he did nothing wrong. The Sirens' song was embedded deep within his psyche and was reinforced over the years with his receipt of 2010 and 2014 tax refund checks from the federal government, along with a "zero balance due" letter for Dr. Allen's 2011 taxes. (Defendant's Exhibits B,C,D) In complete candor, Dr. Allen would have continued in his belief regarding what is and what is not "taxable income" if not confronted with the IRS investigation.

Nonetheless, Dr. Allen worked with defense counsel and cooperated with the U.S. Attorney's Office and the IRS to

determine the amount of loss and eliminate the need for a grand jury indictment.  Dr. Allen provided documentation and other relevant information which led to Dr. Allen's acceptance of the instant one-count criminal information filed against him on May 9, 2019.  Another example of his cooperation was his waiver of the statute of limitations executed on February 4, 2019. (Defendant's Exhibit E)

Dr. Allen waived Indictment and entered a guilty plea to the Information on June 4, 2019.  Dr. Allen stands prepared to pay the full amount of restitution.  Prior to Dr. Allen's guilty plea, he entered into a plea agreement with the government recognizing the amount of restitution owed to the government and his ready willingness to repay said amount in a forthwith manner. See, Presentence Investigation Report (PIR), paragraph #5.

Dr. Allen's acceptance of responsibility earned him the government's recommendation of a three-level reduction in the total offense level. See, PIR, paragraph #8.

Dr. Allen comes from a broken family. His parents were divorced in and around 1976, when he was ten (10) years old.  He moved to Florida with his mother in 1981 and in March of 1982 dropped out of a Florida High School, during his sophomore year.  However, Dr. Allen did take the General Education Development (GED) test prior to leaving

the state of Florida.  Shortly thereafter, Dr. Allen moved
back to the Philadelphia area to live with his father.  Dr.
Allen attended Bensalem Senior High School within the
Philadelphia area for a brief period, but stopped attending
classes, when he learned he passed the Florida GED test.
Therefore, Dr. Allen never graduated from high school nor
did he ever receive a high school diploma.  This was the
genesis of Dr. Allen's untraditional educational journey.

As a GED educated seventeen-year-old and into his
later teens, Dr. Allen worked within the restaurant
business as a dishwasher, as well as other odd positions.
During these early adult years, Dr. Allen always tried to
maintain some form of employment.

In 1986, Dr. Allen began a multi-year career in the
mortgage, real estate and finance business.  He attended
real estate courses and became a mortgage loan officer and
then a broker for Citi Corp.  He became very familiar with
the real estate purchasing process.  He was exposed to how
government regulations and policies impacted how the
mortgage and finance businesses could and would operate.
When the real estate market crashed in and around 2007 and
2008 with the ensuing criminal prosecutions, Dr. Allen's
view of government, rightly or wrongly, became jaded
because he believed the government and its policies played

a much larger role in the real estate collapse that led to the hardships endured by many ordinary citizens.

His perspective that the government was not properly held responsible for the harm done to thousands of would-be homeowners, gave rise to Dr. Allen's notion that the government's edicts and pronouncements along with its other interactions with ordinary citizens may be flawed. It also made him susceptible to the Sirens' call of Peter Hendrickson's book "Cracking the Code" as referenced in paragraph #18 of the Presentence Investigation Report. Ever wary not to cross the line of excuse versus explanation, Dr. Allen avers that his belief that the government was patently wrong in the mortgage scandal started him down the road to believing that the government did not have the "right" to tax certain proceeds. Dr. Allen was blinded to the rocky outcrops that lay dead ahead and continued to listen to the Sirens' call that the waterway ahead was clear of any dangerous obstacles. The 2010 and 2014 tax refund checks from the federal government, along with a "zero balance due" letter for Dr. Allen's 2011 taxes falsely reinforced and self-confirmed to Dr. Allen that clear sailing was ensured.

In 1992, Dr. Allen met the love of his life, Maria Muñoz. Within nine months of their first encounter, he

asked and then married Ms. Muñoz in October 1992. Together they have raised a college attending son, Andrew Allen and have lived a modest life. Dr. Allen's wife served as his greatest source of encouragement.

Dr. Allen unknowingly began his journey into the medical profession during the summer of 1992, by first attending Community College of Philadelphia. Dr. Allen graduated with highest honors in 1994, due in large part to the encouragement of Community College English professor Joseph Montgomery along with Maria. Dr. Allen's love for science was ignited by Community College biology professor Judith Johnson. He discovered an interest in nursing and began to volunteer at Jefferson Frankford Hospital in the emergency room and the intensive care unit.

Dr. Allen had evolved from a high schooler not interested in attending school or furthering his education, to someone enthusiastically exposing himself to new thoughts and ideas.

This minor epiphany led directly to Dr. Allen's continued educational pursuit within the field of medicine. Upon graduating from Community College, Dr. Allen enrolled in Thomas Jefferson School of Nursing and graduated in 1996. Dr. Allen's further education is well documented within the presentence investigation report from his degree

of Doctor of Osteopathic Medicine to his award of the maintenance of certification in the specialty of anesthesiology from the American Board of Anesthesiology in 2018.  See, PIR paragraphs #51, #52 and #53.

Dr. Allen would not have achieved such educational and professional success without his wife's unwavering support. Thus, Dr. Allen's greatest regret is that his conduct placed his wife in danger of criminal prosecution. Endangering Maria's reputation, livelihood and possible liberty, haunts Dr. Allen more than any punishment imposed by this Honorable Court or even the probable loss of his storied medical career.

<u>**FEDERAL SENTENCING GUIDELINES**</u>

Sentencing courts should apply a three-step analysis in sentencing criminal defendants.  *See, <u>United States v. Wise, 515 F.3d 207 (3d Cir. 2008)</u>.*

> ", the district court must perform three steps in determining the appropriate sentence to impose on a defendant. As *Gall* makes clear, a district court must begin the process by correctly calculating the applicable Guidelines range. 128 S.Ct. at 596; *see also Gunter,* 462 F.3d at 247. As part of calculating the applicable range, this Court's precedent instructs district courts to conduct a second step, which is to "formally rule

on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Gunter,* 462 F.3d at 247 (internal quotation marks and citation omitted). Finally, after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the §3553(a) factors and determining the appropriate sentence to impose. *Gall,* 128 S.Ct. at 596; *Gunter,* 462 F.3d at 247." *Wise, 515 F.3d at* 216-217.

**Calculating Sentencing Guidelines**

In the instant matter, the Presentence Investigation Report (PIR) accurately reflects the base offense level of 20 as determined by the Tax Table with a range of loss which is more than $550,00 but less than $1,500,00 pursuant to USSG §2T4.1(H). See PIR, paragraph 23. Upon the application of the Acceptance of Responsibility provisions at USSG §3E1.1(a) and USSG §3E1.1(b) respectively the total offense level is 17. See PIR, paragraph 32.

Dr. Allen and Butler Memorial Hospital mutually agreed not to renew Dr. Allen's employment on or about April 2, 2019.

See PIR paragraph #55. His future employment in the medical profession is unknown and his wife, Maria at least for the foreseeable future will be the sole source of income. See PIR paragraph #60. The PIR reports that Dr. Allen's net worth is in the negative to the tune of -$123,288.00. See PIR paragraph #59. The PIR concludes that Dr. Allen possesses the ability to pay a fine. See PIR paragraph #63. The PIR accurately indicates the fine range for the instant offense as $5,000 to $50,000 pursuant to USSG §§5E1.2(c)(3) and (h)(1). See PIR paragraph #74. Nonetheless, Dr. Allen respectfully requests this Honorable Court to consider the above-detailed factors along with any other relevant information in determining whether Dr. Allen has the current or future ability to pay any fine or minimizing any fine imposed.

## 18 U.S.C. §3553 FACTORS

A sentencing court in exercising its discretion shall impose a sentence sufficient, but not greater than is necessary, to effectuate the purposes and goals delineated within 18 U.S.C. §3553. See, *United States v. Booker*, *543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621(2005)*.

*Booker* requires the sentencing court to consider the Guideline's ranges, but it permits the court to tailor the

sentence in light of other statutory concerns as well. *Booker,*
*543 U.S. 220*.   This includes the unique history and
characteristics of each defendant, to include Dr. Allen.

"It has been uniform and constant in the federal judicial
tradition for the sentencing judge to consider every
convicted person as an individual and every case as a unique
study in the human failings that sometimes mitigate,
sometimes magnify, the crime and the punishment to ensue."
Koon v. United States, 518 U.S. 81, 113, 116 S. Ct. 2035, 135
L. Ed. 2d 392 (1996); Gall v United States, 552 U.S. 38, 128
S. Ct. 586, 598, 169 L. Ed 2d 445 (2007); and United States
v Tomko, 562 F.3d 558, 574 (3rd Cir 2009). Dr. Allen's written
allocution reveals that he personally believed to his core,
based on his non-legally trained research, that there were
strict limitations to the government's taxing authority.  He
further indicates that he "felt compelled to do what he
thought was right . . .."  He also uses the word "courage" to
describe his act of filing his 2010 tax return.   It is
averred, Dr. Allen was not a man scheming to defraud the
government but rather a principled individual beguiled by
self-confirming and erroneous information that he was in the
right.  This Honorable Court should not interpret the above
as an excuse, but as a personal explanation as to Dr. Allen's
conduct.  It is respectively requested this Honorable Court

consider Dr. Allen's unique failings when fashioning an individualized sentence.

In addition, "(i)n order for the Guidelines regime to be truly advisory, a district court must be *potentially* able, when the proper situation arises, to sentence a defendant outside the Guidelines range but within the statutory range. Any other conclusion would alter the statutory sentencing scheme enacted by Congress and interpreted by *Booker*." Tomko, 562 F.3d 558,574-575. Dr. Allen respectfully requests this Honorable Court give due consideration to a downward variance from the sentencing guideline range.

Finally, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the *18 U.S.C.S. § 3553(a)* factors to determine whether they support the sentence requested by a party. In so doing, the district judge may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented."

Gall, 552 U.S. 38, *38; 128 S. Ct. 586, **586; 169 L. Ed.
2d 445, ***447; 2007 U.S. LEXIS 13083, ****1

A thorough analysis of Dr. Allen's history, character,
behavior and the nature and circumstances of the offense will
provide this Honorable Court with adequate reasons and
justification to grant a downward variance from the
Guidelines.

**Nature and Circumstances of the Offense**

As to the nature and circumstances of the instant
offense, Dr. Allen has taken full and timely acceptance of
responsibility.  He readily cooperated with the government
upon learning of its investigation. He recognizes and does
not minimize the seriousness of his conduct.  As noted
throughout this Memorandum, Dr. Allen acknowledges that his
conduct was indefensible, however he maintains that his
actions were neither motivated by greed nor for self-
aggrandizement.  He and his family reside in a modest home in
the Philadelphia area that was purchased in 2007 and has a
current fair market value of $650,000 but a $733,282
outstanding mortgage.  See PIR, paragraph 59.  Neither he nor
his wife spend lavishly on personal items.  The one luxury,
so to speak, is periodically travelling to his wife's home
country, Colombia.  Dr. Jeffrey Astbury notes in his

"Character Letter" that Dr. Allen is a "simple man who lives a modest lifestyle. He enjoys the simple things in life such as watching movies and spending time with his family. He lives to serve others and cherishes his family." Defendant's Exhibit F.

Dr. Allen reiterates that his conduct, at least in his mind, was principled, yet clearly faulty. He convinced himself, each tax year, that he was fighting the good fight against a behemoth when he mailed dozens upon dozens of correspondences to the Internal Revenue Service. The tax refund checks that he received served as false evidence that he was in the right. Dr. Gail McCensky provides some illumination of Dr. Allen's mindset when she writes in her "Character Letter" that Dr. Allen's "actions are dictated by the desire to do right no matter the consequences." She adds, "Dr. Allen is a man of honor and integrity held in high regard by those who know and work with him. Perhaps his motives were misguided. That is a far cry from malicious." Defendant's Exhibit G.

Again, Dr. Allen has no other explanation, sans any excuse, as to why he would engage in such conduct that jeopardized his wife's reputation, livelihood and ultimately her freedom. Once hooked on the idea the government was "wrong", he stubbornly and repeatedly wanted to be proven

"right" regardless of the glaring consequences to himself and his wife, Maria.

The amount of loss is undeniable. Although, Dr. Allen's conduct withheld monies from the government, he does possess the ability to fully reimburse for the suffered losses. Dr. Allen respectfully requests this Honorable Court to heavily weigh in his favor, in imposing a sentence, the lack of an avarice motivation thereby providing him the wherewithal to fully reimburse the government in a forthwith manner. Oftentimes theft and fraud cases are motivated with the defendant's desire to live above their means in a lavish lifestyle squandering the monies they fraudulently acquired.

## History and Character of Dr. Allen

This Honorable Court, in the exercise of its post-*Booker* discretion, may impose a sentence sufficient, but not greater than necessary. See, *United States v. Booker*, *543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621(2005)*. *Booker* requires the sentencing court to consider the Guideline's ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well. *Booker*, *543 U.S. 220*. This includes the unique history and characteristics of each defendant, to include Dr. Allen.

This Honorable Court in the exercise of its sentencing discretion may consider a multitude of factors in fashioning a sentence that is sufficient but not greater than necessary. Although these factors may not individually or in combination warrant a downward departure but, may serve to justify a downward variance in the applicable sentencing guidelines.

Dr. Allen's early childhood was somewhat disruptive in being raised by parents suffering from alcohol abuse. See PIR paragraph #42. In the "Character Letter" authored by Dr. Allen's sister, Nancy Lorenz, she further elaborates that "growing up we were raised in a poor, dysfunctional family. Alcohol and drug abuse plagued our parent's (sic) lives and played a huge role in the violence and dysfunction that we faced in our childhood." Defendant's Exhibit H.

Dr. Allen himself admits he has suffered from alcohol abuse. See PIR paragraph #47.

Further disruption occurred when Dr. Allen's parents divorced. Dr. Allen never received a graduating diploma from a high school, but rather acquired a general educational development (GED). See PIR paragraph #50. Nonetheless, Dr. Allen has maintained almost full employment during his adult life. See PIR paragraphs #55-58.

Dr. Allen epitomizes the self-made person. Armed with his GED, Dr. Allen embarked on an educational path that

eventually led to a successful medical career as an anesthesiologist. He and his wife of 27 years, Maria, have lived modestly while raising their son, Andrew Allen.

By all accounts, Dr. Allen is a highly educated individual who allowed his skepticism of the government and the Siren song of "Cracking the Code" to lure him to the brink of destroying his livelihood and esteemed career.

Although none of the above-detailed conditions present to an unusual degree warranting a downward departure from the calculated guidelines, Dr. Allen avers they do, in their totality, justify a downward variance from the applicable sentencing guidelines.

Dr. Allen urges this Honorable Court to consider the above-detailed characteristics in imposing its sentence.


**Respect for the Law and Just Punishment**

Prior to the instant offense, Dr. Allen had a single arrest for driving under the influence in 1986. He was admitted into the first-time offender's program, ARD. He successfully completed the program earning the dismissal of all charges. See PIR, paragraph 36. This ARD disposition does not constitute a conviction. See Pa.R.Cr.P 312, comment to Pennsylvania Rules of Criminal Procedure. An individual with such a nominal arrest record evinces a

personal respect for the law. Even though the federal sentencing guideline matrix takes into consideration an individual's prior criminal history in establishing the guideline range, a court may consider such a minimal record in imposing a downward variance sentence. See Tomko. Neither will such a sentence diminish respect for the law.

Moreover, Defendant will make full and faces possible significant civil penalties from the Internal Revenue Service. Paying said restitution without the need for the government to collect said restitution in monthly installments, the possible civil penalties, his negative net worth and the likely loss of his ability to practice medicine in totality make a fine in the instant case unnecessary and particularly burdensome.


**<u>Adequate Deterrence</u>**

As previously noted, Dr. Allen's charged conduct endangered his wife, Maria's reputation, career and liberty. The fact that his conduct jeopardized Maria coupled with his deep love for her deeply affected him.

The instant conviction, in and of itself, most likely prohibits Dr. Allen from continuing in his chosen profession as an anesthesiologist. Suffering the loss of a peer-respected lengthy career will be devastating.

Dr. John Hoffman, Jr., writes "I have never seen him demonstrate any dishonorable characteristics in both his personal and professional life. Time away from his chosen profession is a disservice to the community." Defendant's Exhibit I. Placing his wife in jeopardy and the loss of his profession arguably serves as a sufficient specific deterrent to this defendant to ensure no future criminality.

**<u>Sentencing Range Established</u>**

The PIR assesses the Total Offense Level of 17 with a criminal history category of I, providing for a guideline range of 24 months to 30 months. PIR, paragraph 65. The applicable guideline range falls within Zone D disallowing a sentence to probation without a downward variation. PIR, paragraph 70.

**<u>Restitution</u>**

Dr. Allen pursuant to the plea agreement and as noted within the Presentence Investigation Report recognizes and accepts his responsibility to pay restitution. See PIR, paragraph 75. Dr. Allen remitted $975,842.29, to the U.S. District Court Clerk on September 4, 2019 and will address the interest due in the near future. Defendant's Exhibit J.

## CONCLUSION

For the reasons detailed above, Dr. Allen urges this Honorable Court to impose a sentence that is sufficient, but not greater than is necessary, to effectuate the ends of justice by granting a downward departure or a downward variance and sentencing Dr. Allen to probation.


Respectfully submitted,


By:  /s/ R. Anthony DeLuca
     R. Anthony DeLuca, Esquire
     PA I.D. # 80751
     DeLuca, Ricciuti & Konieczka
     225 Ross Street, 4th Floor
     Pittsburgh, PA 15219
     (412) 281-6869

     anthony@drklawyers.com